**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22:cv-80464-Matthewman**

FITZJOHN MCCANN and
ROBINSON ROMAN,

      Plaintiffs,

v.

FRIGATE'S WATERFRONT BAR &
GRILL, INC., a Florida profit corporation,

      Defendant.

_____/

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs, FITZJOHN MCCANN and ROBINSON ROMAN, on behalf of themselves and on behalf of all others similarly situated ("Plaintiffs"), and FRIGATE'S WATERFRONT BAR & GRILL, INC., a Florida profit corporation ("Defendant") by and through their undersigned counsel, hereby move for entry of an order granting preliminary approval of the class action settlement as set for in the Parties' Settlement Agreement, attached as Exhibit 1[1], and certification of the Settlement Class. The Parties further seek approval to send notice to the Settlement Class in the form and manner prescribed on the proposed Notice Forms attached as Exhibit 2.

_____

[1] The undersigned is attaching two copies of the settlement agreement as Plaintiffs signed them separately.

## **INTRODUCTION**

Following a settlement conference before Magistrate Judge Ryon A. McCabe on September 13, 2022, the Parties negotiated a settlement on a class-wide basis of the claims in this matter. (DE 40). That settlement resulted in the fully executed Settlement Agreement attached as Exhibit 1 to this Motion. This Settlement Agreement represents a fair, equitable resolution of the claims brought by Plaintiffs in this matter. For a period from April 16, 2021, through January 7, 2022, Defendant deducted $2.00 each paycheck from all employees for breakage.[2] Plaintiffs contend that because of this deduction, Defendant improperly retained tips and therefore failed to pay proper minimum wage in violation of the Florida Constitution, Article X, Section 24, as well as violation of the Fair Labor Standards Act (FLSA), 29 U.S.C §216. For employees who worked more than 40 hours in a given workweek, Plaintiffs further contend that this unlawful retention of tips resulted in a failure to pay the proper overtime rate. Defendant admitted that it made this deduction for breakage, but otherwise denied that it resulted in a violation of wage or hour laws; further Defendant contends that if such a violation occurred, same did not result in the loss of its "tip credit" and therefore Plaintiffs' recovery would be limited to reimbursement of the $2 breakage fee (most if not all of which has already been reimbursed to the affected employees).

Under the Settlement Agreement, Defendant has agreed to set aside a lump sum of $60,000, which members of the Settlement Class shall receive on a pro rata basis depending on the amount of hours worked during the Relevant Liability Period of April 16, 2021, through January 7, 2022.

---

[2] "Breakage" refers to the cost of broken items such as dishes.

This $60,000 represents approximately 50.3% of the damages calculated for the entire class by Plaintiff's counsel. A detailed calculation for each Settlement Class member, including their pro rata amount under the terms of the Settlement Agreement, is attached as Exhibit 3. To receive their share, Settlement Class members must affirmatively agree to accept their pro rata share in exchange for a limited release after receiving notice from Defendant. Defendant, through their counsel, shall administer the sending of notice and payments to Settlement Class members.

The terms of the Settlement Agreement in this case are "fair, reasonable, and adequate" and should receive the Court's preliminary approval so that the Settlement Class can be informed and be heard as to their opinions of the Settlement Agreement at the Final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. For a period from April 16, 2021, through January 7, 2022, ("Relevant Liability Period"), Frigate's deducted from its employees $2.00 each paycheck for "breakage." For tipped employees who Frigate's claimed a full tipped-credit deduction, which includes Plaintiffs and ninety-nine similarly situated individuals, Plaintiff contends that this deduction constituted an improper retention of tips, which means that Frigate's was not permitted to claim a tip credit for the Relevant Liability Period. As a result, Frigate's paid those employees below minimum wage. For weeks when those employees worked over 40 hours, this deduction also caused those employees to be improperly paid overtime. It is Defendant's contention that its actions did not result in the loss of its tip credit and therefore any recovery would be limited to reimbursement of the $2 breakage fee (most if not all of which has already been reimbursed to the affected employees). Defendant points to the fact that all employees, both tipped and untipped

alike, had the $2 breakage fee deducted from their paychecks, evidencing that funds did not reflect a retention of the employees' tips.

Plaintiff McCann filed his Complaint in this matter on March 23, 2022 (DE 1), alleging two counts: one, failure to pay minimum wage in violation of the Florida Constitution; and two, failure to pay minimum wage in violation of the FLSA. On May 25, 2022, Plaintiffs filed their Amended Complaint (DE 23) to add Plaintiff Roman. The Amended Complaint also added a retaliation claim for Plaintiff McCann; however, to avoid any factual dissimilarities between Plaintiffs and their potential class members, Plaintiff's filed a Second Amended Complaint (DE 34) on July 18, 2022, to remove the retaliation claim. On September 2, 2022, Plaintiffs filed a Motion for Hybrid Class Certification under Federal Rule of Civil Procedure 23 and Conditional Certification as a Collective Action under 29 U.S.C. §216(b) ("Class Cert Motion") (DE 39).

While that motion was pending, the Parties attended a settlement conference before the Magistrate Judge Ryon A. McCabe. Under the guidance and supervision of Judge McCabe, the Parties reached a preliminary agreement to resolve this matter on a class-wide basis (DE 40).

## THE SETTLEMENT AGREEMENT AND ITS TERMS

### 1. Proposed Settlement Class

The Settlement Class in this matter is defined as follows:

> All tipped employees who worked for Defendant from April 16, 2021 through January 7, 2022, for whom Defendant claimed a tip credit to meet Defendant's minimum wage obligations under Article X, Section 24, of the Florida Constitution and the FLSA, and for whom Defendant subjected to a deduction for breakage.

Through discovery, Plaintiff obtained from Defendant payroll records for all individuals employed

by Defendant during the Relevant Liability Period. Using those records, Plaintiff identified one-hundred-and-one (101) individuals who met the definition of the Settlement Class. Exhibit 3 to this Motion is a table showing each member of the Settlement Class, the hours they worked during the Relevant Liability Period, and the damages calculated for each member. Because the Relevant Liability Period encompassed a date when Florida's minimum wage increased, the table breaks hours down into periods before and after that increase.

### 2. Financial Terms

As shown on Exhibit 3, Plaintiffs calculated the total damages to the class at $119,308.28. This is an average of $1,181.27 per Settlement Class member. Defendant has agreed to set aside $60,000 for payment to the Settlement Class. This amount shall be paid out on a pro rata basis depending on the amount of hours worked during the Relevant Liability Period. Exhibit 3 shows the amount owed to each Settlement Class member.

As an example, Plaintiff Roman worked 407 hours during the Relevant Liability Period. He calculated his owed wages at $1,205.39. Under the terms of the Settlement Agreement, he is entitled to payment of $606.19.

This amount shall be classified as wages and be subject to lawful deductions.

### 3. Nonfinancial Terms

The Parties agreed that this matter will be settled on a class-wide basis subject to the requirements of Federal Rule of Civil Procedure 23. Consistent with the Settlement Agreement between the Parties, the settlement shall  resolve all claims of the Settlement Class Members as brought in this Action and in this Motion for Class Certification, including alleged violations of the Florida

Constitution, Article X, Section 24, the Florida Minimum Wage Act, Fla. Stat. § 448.110, and the FLSA. Defendant shall provide notice to the Settlement Class of their entitlement to settlement proceeds. To receive their settlement proceeds, Settlement Class members must return a signed claim form, which shall include a release of wage or hour claims related to the breakage deduction during the Relevant Liability Period. There will not be any general release.

### 4.   Notice to Settlement Class

Defendant shall provide notice to the Settlement Class in the form attached as Exhibit 2 to this Motion ("Notice Form") or in a form required by the Court. Defendant will provide the notice three ways: one, via electronic mail ("e-mail") to the e-mail address, if any, included on the job application of the Settlement Class member; two, via regular mail to the last known mailing address of the Settlement Class member; and three, by attachment to the physical paycheck for Settlement Class members who are currently employed.  The Notice Form shall inform Settlement Class members that they are members of a class action, that the Parties have reached a preliminary agreement of that class action, and that they are entitled to compensation under the agreement. The notice will not state the exact amount that the Settlement Class member is entitled to.

The Notice Form will provide Settlement Class members 45 days to return the signed claim form or object to the settlement. For clarity, if the signed claim form or objection is sent via regular mail, the signed claim form or objection must be postmarked no later than 45 days from the date of the Notice Form. If the Settlement Class member does not return the signed claim form or object, their pro rata amount of the $60,000 shall revert to Defendant.

**5. Claims Process**

Defendant shall handle the claims process; however, the Notice Form shall provide contact information for both Defendant's counsel and Plaintiffs' counsel should Settlement Class members have questions. Settlement Class members who return a signed claim form shall receive payment no later than 15 days from final approval by this Court following the Final Fairness Hearing.

**6. Class Counsel Fees and Expenses and Named Plaintiff Incentive**

Defendant shall pay $37,500 in attorney fees and costs to Scott Law Team, LLC. Scott Law Team, LLC shall provide an IRS Form W-9 to Defendant. Defendant shall pay $4,000 each to named Plaintiffs FitzJohn McCann and Robinson Roman as a Named Plaintiff Incentive. This amount shall not be subject to deductions, and Plaintiffs McCann and Robinson shall provide an IRS Form W-9 to Defendant for this payment.

## MEMORANDUM OF LAW

**1. Preliminary Approval of the Settlement Agreement is Appropriate**

To implement a Settlement Agreement in a class action, the Federal Rules of Civil Procedure require that there first be notice to the Settlement Class, a fairness hearing, and this Court's final approval. Settlement, "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992).

"Approval of a class-action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citation omitted). In the second step, after notice to the class and time and opportunity for class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *Id.*

The standard for preliminary approval of a class action settlement is not high: a proposed settlement will be preliminarily approved if it falls, "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation ("MCL") § 1.46 at 62, 64–65 (5th ed. 1982)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

Here, the Court should grant preliminary approval of the Settlement Agreement. The settlement in this matter is the result of good faith negotiations between the parties during a settlement conference before a federal magistrate judge, and the Settlement Agreement carries no obvious deficiencies while being with the range of reason.

**a. The Settlement Agreement is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.**

At the preliminary approval stage, courts consider whether the proposed settlement appears to be "the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011). Courts presume good faith in the negotiating process. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."); MCL (Third) § 30.42 ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms- length negotiations between experienced, capable counsel").

The Settlement Agreement in this matter resulted from a settlement conference before Magistrate Judge McCabe. Prior to the conference, both parties submitted detailed memoranda to Judge McCabe that outlines the strengths, and weaknesses, of their positions. The Parties spent five hours and 28 minutes in court, discussing their position and exchanging offers until a preliminary agreement was reached. (DE 41). Judge McCabe then read the agreement into the record to memorialize the understanding of both Parties.

Defendant's corporate representative was present with his counsel the entire process, as well both named Plaintiffs in this matter with their counsel. At all times, the Parties engaged in good faith, informed negotiations between their experienced counsel.

### b. The Settlement Agreement Provides Considerable Benefits to the Class and Falls Squarely within the Range of Reasonableness.

The terms negotiated by the Parties provide considerable monetary relief to the Settlement Class and falls well within the range of possible approval. Courts routinely hold that settlements

providing the class with a portion of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share and stating "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is unfair or inadequate"). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable [when weighing the benefits of the settlement against the risks associated with proceeding in the litigation]." *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).

The Settlement Agreement provides the Settlement Class with 50.3% of its calculated damages for lost wages. This is a reasonable recovery given the potential risks of litigation. At bottom, had litigation continued, the Settlement Class would have faced the risk of not prevailing on their claims. And even if Plaintiffs had succeeded on their claims, they risked having their damages being dramatically reduced below their calculations.

The primary legal dispute between the Parties was not whether the breakage deduction violated the law, but rather how to calculate the damages for that violation. Under Plaintiffs' theory of damages, Defendant would be required to pay the Settlement Class back pay damages equivalent to the Florida Minimum Wage for each hour worked during the Relevant Liability Period, less the hourly wages actually paid to Plaintiffs and Tipped Employees. Under Defendant's theory of damages, if they were required to pay the Settlement Class back pay damages, it would

only be to pay back the breakage deduction to bring the Settlement Class members back to tipped

minimum wage rate.

In other words, Plaintiffs' theory is that the breakage deduction was an unlawful retention

of tips and therefore required disgorgement of the tip credit. Defendant disagreed with this theory,

and Plaintiffs acknowledged that, while there is no case directly on point, Defendant would have

strong arguments for their position.

**Defendant's Position**:

Defendant's position is essentially that an employer is permitted to apply a "tip credit" if

it satisfies two requirements: (1) the tipped employee must be informed of the tip credit practice

and (2) the employee must retain all the tips he or she receives. 29 U.S.C. § 203(m); 29 C.F.R. §

531.59. "If an employer fails to satisfy either of these preconditions, the tip credit may not be

claimed, regardless of whether employees suffered actual economic harm as a result." *Garcia v.*

*Koning Restaurants Int'l, L.C.*, No. 12-CV-23629, 2013 WL 8150984, at *4 (S.D. Fla. May 10,

2013), quoting *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F.Supp.2d 803, 819 (N.D.Ill.2011).

While Defendant acknowledges that there exists case law in support of the proposition that

a third element exists, that being that for the tip credit to survive, the employee must also be paid

the appropriate minimum wage, the cases that have taken a deeper dive into the actual wording of

the FLSA statute have determined that there is no such third element.

> In essence, these cases recognized the lack of any textual or contextual relationship
> between the tip credit provision of the FLSA and those provisions of the Act that
> mandate payment of minimum and overtime wages and delineate the remedies for
> their violation. Section 216(b) limits damages against an employer who violates  §
> 206 or § 207 of the Act by failing to pay the appropriate minimum wage or overtime

to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages." Neither § 216(b) nor any other section of the Act prescribes loss of an otherwise valid tip credit as the consequence of or a remedy for a § 206 or § 207 violation.

The plaintiffs' contention that such a violation results of its own force in what is effectively a forfeiture of the tip credit cannot be given credence unless we are to ignore basic principles of statutory construction. "[W]here Congress has provided 'elaborate enforcement provisions' for remedying the violation of a federal statute. 'it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under the statute.' '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487–488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (bracket in original). Judges do not have the power to engraft onto statutes provisions, conditions, or limitations that Congress chose not to create. *Honig v. Doe*, 484 U.S. 305, 325, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir.2000).

*Dominguez*, at 821. See also *Goldin v. Boce Group L.C.,* 773 F.Supp.2d 1376, 1378–79, 2011 WL 1157618, *2 (S.D.Fla.2011). Muldowney v. Mac Acquisition, LLC,* 2010 WL 520912 (S.D.Fla.2010), and *Perez v. Palermo Seafood, Inc.,* 2008 WL 7505704 (S.D.Fla.2008).

For example, in *Goldin v. Boce Group, L.C.*, 773 F.Supp.2d 1376 (SD Fla 2011), Judge King discussed damages in a tipped-credit FLSA case and held, "Congress did not choose to include as a remedy disgorgement of the tip credit where the plaintiff is a tipped employee." *Id.* at 1379. Therefore, in that case, where the plaintiff sought damages that included backpay at the regular, non-tipped employee minimum wage, the Court declined to grant that remedy. *Id.* at 1380.

That being the case, if the employee is not paid the appropriate minimum wage, it is, yes, a violation of the FLSA, but the tip credit has not been lost. Rather, the employee is entitled to

recover the difference between what they were paid and what they should have been paid in accordance with the minimum wage. In this case equating to reimbursement of the $2 breakage fee deduction per pay period.

To address the second element, the factual question is whether the deduction of the $2 breakage fee equates to the employees not retaining their tips. Here Defendant contends that there is no question other than the $2 was not deducted from the employees' tips. This is because all employees, tipped as well as non-tipped, from dishwashers to the General Manager, all had the $2 breakage fee deducted from their paychecks. It was not something which effected only the servers, or only tipped employees. This deduction was made from the employees' wages across the board, not their tips, and thus the tip credit survives.

**Plaintiffs' Position:**

Plaintiff contends that this case is distinguishable from *Goldin*, and the other opinions relied upon by Judge King in that decision. In *Goldin,* the Plaintiff admitted that he "was paid the reduced minimum wage as required." *Id. Goldin* lays out the perquisites an employer must meet to claim the tip credit, which are informing the employee and ensuring that "all tips received by the employee must be retained by the employee." *Id.* at 1379. Here, Plaintiffs argue that the deduction for breakage constituted an illegal retention of tips. As evidence of this, we only need to look at the payroll records provided in discovery. The payroll records show separate entries for regular wages and tips. For Settlement Class members, they were paid at a rate of the tipped minimum wage of either $5.63 or $6.98. Defendant then deducts an amount for breakage. Because this deduction does not change the hourly pay rate on the paystub, Plaintiffs argue that it comes from

their tips, not their hourly wages. Therefore, the deduction is an unlawful retention, Defendant is not able to claim the tip credit, and the proper damages here include backpay up to the regular, non-tipped minimum wage.

Further, *Goldin*'s reasoning was limited to dismissing a count under the FLSA, not under the Florida Constitution. The Florida Constitution provides similar damages to the FLSA (backpay, liquidated damages, and attorney fees); however, unlike the FLSA, the Florida Constitution states an aggrieved employee, "shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation." Fla. Const. art. X, § 24(e). Under the circumstances of this case, disgorgement of the tip credit would be relief that is "appropriate to remedy the violation." Recoupment of a $2.00 per paystub fee is not a sufficient remedy to motivate most aggrieved workers to exercise their rights (even with an equal amount of liquidated damages). Not facing a disgorgement of the tip credit, and with a small likelihood of push back, employers will continue to violate the law in the manner done here.

Given the arguments that both sides have on the question of damages, the Settlement Agreement here, which sets aside 50.3% of the calculated damages for Settlement Class members to claim, is a fair compromise that falls within the range of reasonableness.

The Parties anticipate that this Court may also be concerned about liquidated damages. Under the FLSA, an employer is required to pay, "an additional equal amount as liquidated damages." 29 U.S.C. §216. But if the employer can show that their violation was "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act," then Court may choose not to award any liquidated damaged. 29

U.S.C. §260. To show good faith, "[t]he employer must prove both subjective and objective 'good faith,' that is, (1) that its actions were taken in a 'good faith' belief that they did not violate the law and (2) that it had reasonable grounds for believing that its actions were not in violation of the law." *Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1246 (S.D. Fla. 2014). Plaintiffs here dispute that Defendant could prove either subjective or objective good faith. But Plaintiffs also anticipate that Defendant intended to argue that it relied on the advice of its payroll company in imposing this breakage fee. In responses to interrogatories, Defendant stated:

> At the end of March 2021, I sat down with our payroll company's owner Tim Hamilton of CPA Payroll. I had heard of other restaurants charging employees, including wait staff, for some of the breakage fee on plates and glassware. I asked him if he knew of this and if it was legal to do it. He said he had other restaurants under his payroll that do the same thing and that it was okay. In January 2022, I asked him about this again over the phone. He said he was going to make a call and get right back to me. He called me back after a short period and confirmed what he had told me in March of the previous year.

Plaintiffs disagree that this would have established "good faith" to avoid liquidated damages; however, it is another attenuate risk of litigation that the Settlement Class avoids by way of the Settlement Agreement.

### c. Counsel Believes the Settlement Agreement is Reasonable and in the Best Interest of the Settlement Class.

Finally, the Court should give significant weight to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See, e.g.*, *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (the recommendation of experienced counsel is entitled to great weight). Plaintiffs' counsel here have

litigated numerous cases in state and federal courts under both the FLSA and Florida law, and fully support the Settlement Agreement. Based on this experience, the substantial information learned during the litigation, and decades of experience litigating cases such as this, it is Plaintiffs' counsel's informed opinion that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class.

### 2.   The Court Should Certify the Proposed Settlement Class

"To be entitled to class certification under Federal Rule of Civil Procedure 23, the party seeking certification must have standing, and must meet each of the requirements specified in Rule 23(a), as well as at least one subsection of Rule 23(b)." *Bennett v. Hayes Robertson Grp.*, Inc., 880 F. Supp. 2d 1270, 1277 (S.D. Fla. 2012) (*citing Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)).

#### a.   The Settlement Class Meets the Requirements of Rule 23(a)

"Rule 23(a) has four requirements: numerosity, commonality, typicality, and adequacy of representation." *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279 (S.D. Fla. 2012). Each is discussed below.

##### i.   The Settlement Class is sufficiently numerous.

Rule 23(a) requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is not determined by a "numerical yardstick." *Bennett,* 880 F. Supp. 2d at 1279 (citing *Hastings-Murtagh v. Texas Air Corp.*, 119 F.R.D. 450, 459 (S.D. Fla. 1988)). The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other

factors.'" *Manno v. Healthcare Revenue Recovery Grp.*, LLC, 289 F.R.D. 674, 684 (S.D.Fla.2013) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)).

Here, the Settlement Class agreed to by the Parties includes one-hundred-and-one (101) individuals employed by Defendant during the Relevant Liability Period. This far exceeds the "general rule of thumb in the Eleventh Circuit" of more than forty potential class members.

### ii. The Settlement Class meets Commonality.

Commonality is the requirement that "there are questions of law or fact common to the class" Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Bennett*, 880 F. Supp. 2d at 1280 (quoting *Dukes*, 131 S. Ct. at 2551). Commonality is a "relatively light burden." *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (internal quotation marks omitted). "Generally, the commonality requirement is met if the allegations involve a common course of conduct by the defendant." *Palm Beach Golf Ctr.*, 311 F.R.D. at 695.

Here, there is no factual dispute between the parties, only questions of law that are applicable to all Settlement Class Members. Specifically, this case challenged a company-wide practice by Defendant of deducting a breakage fee from each employee's paycheck. Plaintiffs contend that this deduction was an unlawful retention of the tips from the Settlement Class, resulting in wage and hour violations under federal and state law. Defendant disputes that this

deduction was unlawful. Further, Plaintiffs contend that the damages for this violation are disgorgement of the tip credit, requiring that each Settlement Class member be paid the standard minimum wage. Defendant contends that, if there are damages owed, it is only to pay back the breakage fee.  Those questions of law are common to the entire Settlement Class.

### iii. The Claims of Plaintiffs are Typical to the Settlement Class.

Typicality requires, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class." *Bennett*, 880 F. Supp. 2d at 1280 (*citing Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001)). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Id.* (*citing Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004, 105 S. Ct. 1357, 84 L. Ed. 2d 379 (1985)). The claims "need not be identical"; there must be a "sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

Here, the named Plaintiffs Fitzjohn McCann and Robinson Roman satisfy this requirement. Their claims, as alleged in the Complaint, arise from the same practice of Defendant as the claims for all Class Members. The legal theory is also the same for the named Plaintiffs as it is for each Class Member: Defendant unlawfully deducted a breakage fee from each paycheck of tipped employees, which led to a violation of the Florida minimum wage for each tipped employee. The

Settlement Class includes ninety-nine other individuals with the same claim. This satisfies the nexus requirement for their claims and establishes typicality.

### iv.  Plaintiffs and their Counsel are Adequate Representatives.

Finally, adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy "is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case." *Bennett*, 880 F. Supp. 2d at 1281 (*citing Sosna v. Iowa*, 419 U.S. 393, 403, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975)). "Adequacy exists where the named plaintiffs share common interests with the class members and seek the same type of relief for themselves as they seek for the class. *Id.*

Here, the named Plaintiffs are pursuing the same claims for themselves as they are for the Class Members. No conflicts exist between the Plaintiffs and any Class Members. Further, proposed class counsel Scott Law Team is a well-respected and reputable firm that focuses on labor and employment issues throughout Florida. Lead attorney Cathleen Scott is board-certified in Labor and Employment law by the Florida Supreme Court since 2006 and is an experienced litigator. She is also a certified mediator. She currently sits on the board certification committee for the Florida Bar's Labor and Employment Law Section.

### b.  The Settlement Class Meets the Requirement of a Rule 23(b) Subsection

Here, Plaintiffs allege a class under Rule 23(b)(3), which contains two requirements in addition to those in Rule 23(a). First, the Court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R.

Civ. P. 23(b)(3). Second, the Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

Here, the claims meet the standard for predominance. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief." *Schojan v. Papa Johns Intern., Inc.*, 303 F.R.D. 659, 668 (M.D. Fla. 2014) (internal quotation marks omitted). Courts look at the extent that "individualized proof" and/or "individualized legal points" will be necessary for Plaintiffs to prove their case. *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (internal quotation marks omitted). In this case, Defendant administered the breakage deduction uniformly for all Settlement Class members. Likewise, that deduction resulted in an unlawful retention of tips for each Settlement Class member. No individual questions are material to determining Defendant's liability to the Class Members, so the common questions predominate.

While the precise amount owed to each Class Member may vary based on their work schedule, the formula to calculate that amount will not differ. Importantly, the Supreme Court has held that a class can meet the predominance requirement under 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Finally, the class action mechanism is superior here. "The focus of the superiority analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Palm Beach Golf Ctr.*, 311 F.R.D. at 699 (*quoting Klay*

*v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir.2004)). As one District Court described it in a class action brought on behalf of tipped employees: "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant." *Whitehorn,* 275 F.R.D. at 200. *See, e.g., Overka et al. v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) (noting with approval Plaintiffs' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis"); *see also Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, inter alia, "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, Case No. 07-cv-1126, 2008 U.S. Dist. LEXIS 15821, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). The Florida Constitution specifically highlights the superiority of bringing minimum wage claims under a class basis. The Florida Constitution's provision establishing the minimum wage states in its Enforcement section that "[s]uch actions may be brought as a class action." Fla. Const., Art. X, § 24 (e).

### 3.  The Court Should Appoint the Scott Law Team as Class Counsel

The Parties have named the Scott Law Team as Class Counsel. The firm has significant experience in litigating complex litigation, including class actions. As set out above, lead attorney Cathleen Scott is board-certified in Labor and Employment law by the Florida Supreme Court since 2006 and is an experienced litigator and certified mediator. Because undersigned counsel is

highly qualified and determined to represent the best interests of the Settlement Class, the Court should appoint them Class Counsel moving forward.

<u>**CONCLUSION**</u>

The Parties respectfully request the Court enter an order certifying the proposed class for purposes of settlement, preliminarily approving the terms of the Settlement Agreement, directing that Notice be given to the Class Members in the forms submitted with the Settlement Agreement, and setting a final fairness hearing at least 90 days after entry of the order, in the form attached as Exhibit 4, or in such other form as the Court deems just and proper.

Respectfully submitted this 3rd day of October 2022.

| | |
|---|---|
| <u>s/Cathleen Scott</u><br>Cathleen Scott, Esq.<br>Florida Bar Number 135331<br>Primary e-mail: CScott@scottlawteam.com<br>Secondary e-mail: mail@scottlawteam.com<br>Gabriel "Gabe" Roberts, Esq.<br>Florida Bar No. 1018435<br>Primary e-mail: groberts@scottlawteam.com<br>Secondary e-mail: mail@scottlawteam.com<br>SCOTT LAW TEAM, LLC<br>Jupiter Gardens<br>250 South Central Boulevard, Suite 104-A<br>Jupiter, FL 33458<br>Telephone: (561) 653-0008<br>Facsimile: (561) 653-0020<br>Secondary Address: 101 Northpoint Parkway<br>West Palm Beach, FL 33407<br>www.ScottLawTeam.com<br>*Attorneys for Plaintiffs* | <u>s/Gary A. Isaacs</u><br>Gary A. Isaacs, Esquire, of Counsel<br>Florida Bar No. 602663<br>COHEN NORRIS WOLMER RAY<br>TELEPMAN BERKOWITZ & COHEN<br>712 U.S. Highway One, Suite 400<br>North Palm Beach, Florida 33401<br>Telephone: (561) 844-3600<br>Email: gai@cohennorris.com<br>*Attorneys for Defendant* |