IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22:cv-80464-Matthewman

FITZJOHN MCCANN and
ROBINSON ROMAN,

    Plaintiffs,

v.

FRIGATE'S WATERFRONT BAR &
GRILL, INC., a Florida profit corporation,

    Defendant.
_____/

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs, FITZJOHN MCCANN and ROBINSON ROMAN, on behalf of themselves and on behalf of all others similarly situated ("Plaintiffs"), and FRIGATE'S WATERFRONT BAR & GRILL, INC., a Florida profit corporation ("Defendant") by and through their undersigned counsel, hereby move for entry of an order granting this Joint Motion for Final Approval of Class Action Settlement and states as follow:

**INTRODUCTION**

Following a settlement conference before Magistrate Judge Ryon A. McCabe on September 13, 2022, the Parties negotiated a settlement on a class-wide basis of the claims in this matter. (DE 40). That settlement preliminarily agreement was approved by the Court on October 11, 2022. (DE 43). The Court also approved the written notice of the class action settlement that

was sent to the Class Members. The Class Members had until December 9, 2022, to send in the claim form or file an objection. No class member objected to any aspect of the settlement or sought exclusion from it. As such, the parties respectfully request that this Court grant final approval of the settlement.

## SUMMARY OF THE SETTLEMENT

The Settlement Class in this matter is defined as follows:

> All tipped employees who worked for Defendant from April 16, 2021 through January 7, 2022, for whom Defendant claimed a tip credit to meet Defendant's minimum wage obligations under Article X, Section 24, of the Florida Constitution and the FLSA, and for whom Defendant subjected to a deduction for breakage.

Under the Settlement Agreement, Defendant has agreed to set aside a lump sum of $60,000, which members of the Settlement Class shall receive on a pro rata basis depending on the amount of hours worked during the Relevant Liability Period of April 16, 2021, through January 7, 2022. This $60,000 represents approximately 50.3% of the damages calculated for the entire class by Plaintiff's counsel.

Defendant shall also pay $37,500 in attorney fees and costs to Scott Law Team, LLC. Defendant shall pay $4,000 each to named Plaintiffs FitzJohn McCann and Robinson Roman as a Named Plaintiff Incentive. These amounts shall not be subject to deductions.

## MEMORANDUM OF LAW

### I. The Legal Standard for Final Approval of the Settlement

"Approval of a class-action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval

is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citation omitted). In the second step, after notice to the class and time and opportunity for class members to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable. *Id*. This Court has already granted preliminary approval, and the parties now request that this Court grant final approval at the second step.

"When evaluating whether approval is appropriate, the Court recognizes that '[p]ublic policy strongly favors the pretrial settlement of class action lawsuits.'" *Rosado v. Barry Univ.*, No. 20-21813-CIV, 2021 U.S. Dist. LEXIS 169196, at *10 (S.D. Fla. Sep. 7, 2021) (quoting *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). When reviewing final approval of the settlement, "the Court considers whether (1) the Court has jurisdiction over the subject matter and parties; (2) the Notice Program was reasonably calculated to apprise interested parties of the action and afford them an opportunity to object; (3) the settlement is fair, reasonable, and adequate; and (4) Class Counsel's request for attorneys' fees and litigation expenses is reasonable." *Id*. at *10-11. The Settlement in this case is fair and reasonable under these factors, and the parties seek final approval from the Court.

## II.     The Court has Jurisdiction over the Subject Matter and the Parties

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as the matter involves a federal question, namely a violation of the FLSA, 29 U.S.C. §216(b). The court has personal jurisdiction over the parties as, at all times material to this action, Plaintiffs and

Defendants lived within the State of Florida, Plaintiffs filed and served this action within the district of this Court, and Defendant voluntarily appeared in this Court. The Court also has personal jurisdiction over the Settlement Class Members because, "its members were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard." *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278-GOLD/McALILEY, 2010 U.S. Dist. LEXIS 146073, *6 (S.D. Fla. Apr. 15, 2010).

### III.  The Notice was Reasonably Calculated to Apprise Interested Parties of the Action and Afford an Opportunity to Object

For an action certified under Rule 23, "members should receive 'the best notice that is practicable under the circumstances.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)). "Regardless of the category under which a class suit may be or potentially may be certified, however, rule 23(e) requires that absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).

Here, following preliminary approval of the settlement agreement by the Court, Defendant provided notice to Settlement Class Members in the form and manner approved by the Court. This included sending out the Court-approved Notice Form in three ways: via electronic mail ("e-mail") to the e-mail address, if any, included on the job application of the Settlement Class member; via

regular mail to the last known mailing address of the Settlement Class member; and by attachment to the physical paycheck for Settlement Class members who are currently employed. The Notice Form informed Settlement Class members that they are members of a class action, that the Parties reached a preliminary agreement of that class action, and that they are entitled to compensation under the agreement. The Notice Form provided Settlement Class members 45 days to return a signed claim form or object to the settlement.

In this case, the notice provided was reasonably calculated to inform Settlement Class Members of the action, their rights under the action, and their opportunity to object. *See, e.g., Saccoccio*, 297 F.R.D. at 691 (S.D. Fla. 2014) (finding notice reasonable and practicable when a settlement administrator mailed notice packets to class members, "apprising them of the settlement, identifying the class, notifying them of the nature of the actions and the class claims, providing that class members may enter appearance through counsel if they choose, notifying them of the binding effect of the settlement and steps that must be taken to ensure recovery, and alerting them to their rights to be excluded from the settlement and the deadline to do so. This packet also contained the claims form necessary to submit a claim.").

### IV. The Settlement is Fair, Reasonable, and Adequate

As discussed by Judge Martinez in *Rosado v. Barry Univ.* case:

> To approve the Settlement, the Court must find it fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). "Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement: (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the

> settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement." *Janicijevic v. Classica Cruise Operator, Ltd.,* 20-cv-23223-BLOOM/Louis, 2021 U.S. Dist. LEXIS 95561, *9-10 (S.D. Fla. May 19, 2021) (citing *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)). When evaluating a settlement, "the district court may rely upon the judgment of experienced counsel or the parties." *Nelson v. Mead Johnson & Johnson Co.,* 484 F. App'x 429, 434 (11th Cir. 2012). If there is no "fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (citation omitted).
> *Rosado*, No. 20-21813-CIV, 2021 U.S. Dist. LEXIS 169196, at *13-*14.

"When considering these factors, the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair." *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Indeed, district courts in this circuit have stated, "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and that "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009).

    **a.  There is no existence of fraud or collusion.**

There is no fraud or collusion in this action. The Settlement is the culmination of arm's length negotiations between the parties, conducted during a settlement conference before a Magistrate Judge, which has been hard-fought by competent counsel and determined parties on both sides. The Settlement Agreement in this matter resulted from a settlement conference before

Magistrate Judge McCabe. Prior to the conference, both parties submitted detailed memoranda to Judge McCabe that outlines the strengths, and weaknesses, of their positions. The Parties spent five hours and 28 minutes in court, discussing their position and exchanging offers until a preliminary agreement was reached. (DE 41). Judge McCabe then read the agreement into the record to memorialize the understanding of both Parties.

Defendant's corporate representative was present with his counsel the entire process, as well both named Plaintiffs in this matter with their counsel. At all times, the Parties engaged in good faith, informed negotiations between their experienced counsel.

### b. The complexity, expense, and length of litigation, especially considering the current stage of proceedings and the uncertainty of Plaintiffs' success on the merits, support approval of the Settlement.

Continuing the present action through trial, and any potential appeals, would be an expensive and lengthy process. Absent settlement, Defendant would continue to vigorously defend the case, and resolution could take years. Further litigation would require substantial discovery, briefing on dispositive motions, including briefing on Plaintiffs' Rule 23 claims. The remaining burden for the parties would be substantial as continued litigation would require resolution of complex issues at considerable time and expense. The Settlement is reasonable given the amounts involved and the numerous factual and legal disputes, and the possibility that, if the case had proceeded to trial, Plaintiffs may have collected little or nothing. Likewise, Defendant faces the risk of additional damages, a class action, and high attorneys' fees and costs. Given the risks and uncertainties of continued litigation, the Settlement is fair and reasonable.

*See Rodriguez v. Cap World, Inc. of Florida*, 6:13-cv-1741- Orl-22GJK, 2014 WL 1378097, at *4 (M.D. Fla. April 8, 2014) (approving FLSA settlement after considering "1) the complexity, expense, and length of continued litigation of [the plaintiff's] claims; 2) the probability of success is uncertain; and 3) the range of possible recovery is uncertain").

### c. The Settlement is fair and reasonable when considering the range of possible recovery.

The terms negotiated by the Parties provide considerable monetary relief to the Settlement Class and falls well within the range of possible approval. Courts routinely hold that settlements providing the class with a portion of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share and stating "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is unfair or inadequate"). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable [when weighing the benefits of the settlement against the risks associated with proceeding in the litigation]." *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) (internal quotation marks omitted).

The Settlement Agreement provides the Settlement Class with 50.3% of its calculated damages for lost wages. This is a reasonable recovery given the potential risks of litigation. At bottom, had litigation continued, the Settlement Class would have faced the risk of not prevailing

on their claims. And even if Plaintiffs had succeeded on their claims, they risked having their damages being dramatically reduced below their calculations.

The primary legal dispute between the Parties was not whether the breakage deduction violated the law, but rather how to calculate the damages for that violation. Under Plaintiffs' theory of damages, Defendant would be required to pay the Settlement Class back pay damages equivalent to the Florida Minimum Wage for each hour worked during the Relevant Liability Period, less the hourly wages actually paid to Plaintiffs and Tipped Employees. Under Defendant's theory of damages, if they were required to pay the Settlement Class back pay damages, it would only be to pay back the breakage deduction to bring the Settlement Class members back to tipped minimum wage rate. In other words, Plaintiffs' theory is that the breakage deduction was an unlawful retention of tips and therefore required disgorgement of the tip credit. Defendant disagreed with this theory, and Plaintiffs acknowledged that, while there is no case directly on point, Defendant would have strong arguments for their position.

**Defendant's Position:**

Defendant's position is essentially that an employer is permitted to apply a "tip credit" if it satisfies two requirements: (1) the tipped employee must be informed of the tip credit practice and (2) the employee must retain all the tips he or she receives. 29 U.S.C. § 203(m); 29 C.F.R. § 531.59. "If an employer fails to satisfy either of these preconditions, the tip credit may not be claimed, regardless of whether employees suffered actual economic harm as a result." *Garcia v.*

*Koning Restaurants Int'l, L.C.*, No. 12-CV-23629, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013), quoting *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F.Supp.2d 803, 819 (N.D.Ill.2011).

While Defendant acknowledges that there exists case law in support of the proposition that a third element exists, that being that for the tip credit to survive, the employee must also be paid the appropriate minimum wage, the cases that have taken a deeper dive into the actual wording of the FLSA statute have determined that there is no such third element.

> In essence, these cases recognized the lack of any textual or contextual relationship between the tip credit provision of the FLSA and those provisions of the Act that mandate payment of minimum and overtime wages and delineate the remedies for their violation. Section 216(b) limits damages against an employer who violates § 206 or § 207 of the Act by failing to pay the appropriate minimum wage or overtime to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages." Neither § 216(b) nor any other section of the Act prescribes loss of an otherwise valid tip credit as the consequence of or a remedy for a § 206 or § 207 violation.
>
> The plaintiffs' contention that such a violation results of its own force in what is effectively a forfeiture of the tip credit cannot be given credence unless we are to ignore basic principles of statutory construction. "[W]here Congress has provided 'elaborate enforcement provisions' for remedying the violation of a federal statute. 'it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under the statute.' '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487–488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (bracket in original). Judges do not have the power to engraft onto statutes provisions, conditions, or limitations that Congress chose not to create. *Honig v. Doe*, 484 U.S. 305, 325, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir.2000).

*Dominguez*, at 821. *See also Goldin v. Boce Group L.C.*, 773 F.Supp.2d 1376, 1378–79, 2011 WL 1157618, *2 (S.D.Fla.2011); *Muldowney v. Mac Acquisition*, LLC, 2010 WL 520912 (S.D.Fla.2010); and *Perez v. Palermo Seafood, Inc.,* 2008 WL 7505704 (S.D.Fla.2008).

For example, in *Goldin v. Boce Group*, L.C., 773 F.Supp.2d 1376 (SD Fla 2011), Judge King discussed damages in a tipped-credit FLSA case and held, "Congress did not choose to include as a remedy disgorgement of the tip credit where the plaintiff is a tipped employee." *Id.* at 1379. Therefore, in that case, where the plaintiff sought damages that included backpay at the regular, non-tipped employee minimum wage, the Court declined to grant that remedy. *Id*. at 1380.

That being the case, if the employee is not paid the appropriate minimum wage, it is, yes, a violation of the FLSA, but the tip credit has not been lost. Rather, the employee is entitled to recover the difference between what they were paid and what they should have been paid in accordance with the minimum wage. In this case equating to reimbursement of the $2 breakage fee deduction per pay period.

To address the second element, the factual question is whether the deduction of the $2 breakage fee equates to the employees not retaining their tips. Here Defendant contends that there is no question other than the $2 was not deducted from the employees' tips. This is because all employees, tipped as well as non-tipped, from dishwashers to the General Manager, all had the $2 breakage fee deducted from their paychecks. It was not something which effected only the servers, or only tipped employees. This deduction was made from the employees' wages across the board, not their tips, and thus the tip credit survives.

**Plaintiffs' Position:**

Plaintiff contends that this case is distinguishable from *Goldin*, and the other opinions relied upon by Judge King in that decision. In Goldin, the Plaintiff admitted that he "was paid the reduced minimum wage as required." *Id.* Goldin lays out the perquisites an employer must meet to claim the tip credit, which are informing the employee and ensuring that "all tips received by the employee must be retained by the employee." *Id.* at 1379. Here, Plaintiffs argue that the deduction for breakage constituted an illegal retention of tips. As evidence of this, we only need to look at the payroll records provided in discovery. The payroll records show separate entries for regular wages and tips. For Settlement Class members, they were paid at a rate of the tipped minimum wage of either $5.63 or $6.98. Defendant then deducts an amount for breakage. Because this deduction does not change the hourly pay rate on the paystub, Plaintiffs argue that it comes from their tips, not their hourly wages. Therefore, the deduction is an unlawful retention, Defendant is not able to claim the tip credit, and the proper damages here include backpay up to the non-tipped minimum wage.

Further, *Goldin's* reasoning was limited to dismissing a count under the FLSA, not under the Florida Constitution. The Florida Constitution provides similar damages to the FLSA (backpay, liquidated damages, and attorney fees); however, unlike the FLSA, the Florida Constitution states an aggrieved employee, "shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation." Fla. Const. art. X, § 24(e). Under the circumstances of this case, disgorgement of the tip credit would be relief that is "appropriate to remedy the

violation." Recoupment of a $2.00 per paystub fee is not a sufficient remedy to motivate most aggrieved workers to exercise their rights (even with an equal amount of liquidated damages). Not facing a disgorgement of the tip credit, and with a small likelihood of push back, employers will continue to violate the law in the manner done here.

Given the arguments that both sides have on the question of damages, the Settlement Agreement here, which sets aside 50.3% of the calculated damages for Settlement Class members to claim, is a fair compromise that falls within the range of reasonableness.

The Parties anticipate that this Court may also be concerned about liquidated damages. Under the FLSA, an employer is required to pay, "an additional equal amount as liquidated damages." 29 U.S.C. §216. But if the employer can show that their violation was "in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act," then Court may choose not to award any liquidated damaged. 29 U.S.C. §260. To show good faith, "[t]he employer must prove both subjective and objective 'good faith,' that is, (1) that its actions were taken in a 'good faith' belief that they did not violate the law and (2) that it had reasonable grounds for believing that its actions were not in violation of the law." *Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1246 (S.D. Fla. 2014). Plaintiffs here dispute that Defendant could prove either subjective or objective good faith. But Plaintiffs also anticipate that Defendant intended to argue that it relied on the advice of its payroll company in imposing this breakage fee. In responses to interrogatories, Defendant stated:

> At the end of March 2021, I sat down with our payroll company's owner Tim Hamilton of CPA Payroll. I had heard of other restaurants charging employees,

> including wait staff, for some of the breakage fee on plates and glassware. I asked him if he knew of this and if it was legal to do it. He said he had other restaurants under his payroll that do the same thing and that it was okay. In January 2022, I asked him about this again over the phone. He said he was going to make a call and get right back to me. He called me back after a short period and confirmed what he had told me in March of the previous year.

Plaintiffs disagree that this would have established "good faith" to avoid liquidated damages; however, it is another attenuate risk of litigation that the Settlement Class avoids by way of the Settlement Agreement.

Plaintiffs also face the risk of recovering little or nothing at trial should this case not settle. Defendants claim significant financial difficulties, and Plaintiffs' counsel have corroborated Defendants' assertion through investigation and discovery. Further, even if Plaintiffs were to recover more at trial, any payment would be months or even years later following protracted litigation and possible appeals. Because Plaintiffs "have plainly received a fair deal regarding the sums that were in controversy" when considering the range of recovery, the settlement is fair and reasonable. *Crabtree v. Volkert, Inc.*, No. CIV.A.11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). *See also King v. Wells Fargo Home Mortg.,* 2009 WL 2370640, *2 (M.D. Fla. July 30, 2009) ("Because the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.").

### d. Counsel for both parties agree the Settlement is fair and reasonable.

Defendants are party to the Settlement and consent to this instant motion and the relief requested. Counsel for both parties exercised their experience based on an intimate knowledge of the facts of the case and legal issues facing the parties, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims, the costs and expense of protracted litigation, discovery, trial, and appeals. Counsel believes the Settlement is fair and reasonable. Both Plaintiffs and Defendants agree to the Settlement, voluntarily and knowingly, and the parties agree the Settlement is fair and reasonable based on the facts of the case and negotiations between the parties. *See Comstock v. Florida Metal Recycling, LLC*, No. 08-81190-CIV, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009) (stating that "based upon counsel's representation that this outcome is fair in light of [the plaintiff's] probability of success on the merits and that the settlement was reached without coercion, collusion or undue influence, this Court is satisfied that the settlement agreement is a 'fair and reasonable' resolution of a bona fide dispute over Plaintiff's FLSA claims . . .") (internal citations omitted).

Further, there were no objections to the proposed settlement. A "lack of opposition to the Settlement, is evidence of the fairness, reasonableness, and adequateness of the Settlement." *Rosado*, No. 20-21813-CIV, 2021 U.S. Dist. LEXIS 169196, at *18; *see also Jairam v. Colourpop Cosmetics, LLC,* No. 19-CV-62438-RAR, 2020 U.S. Dist. LEXIS 181656, at *18 (S.D. Fla. Oct. 1, 2020) ("Here, there were no objections filed to the Settlement. This lack of opposition weighs strongly in favor of the Court's approval of the Agreement."); *M.D. v.*

*Centene Corp.*, No. 1:18-cv-22372-JB, 2020 U.S. Dist. LEXIS 104495, at *19 (S.D. Fla. June 12, 2020) ("After Notice was provided, there were no objections to the Settlement and only one opt-out request was received.… This positive response from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement.").

## V.     Class Counsel's Request for Fees and Expenses is Reasonable

Again, quoting from Judge Martinez in *Rosado v. Barry Univ.*:

> The Eleventh Circuit considers several factors when evaluating whether a attorneys' fees award is reasonable: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; [and] (12) awards in similar cases." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3 (11th Cir. 1991).
>
> *Rosado v. Barry Univ.*, No. 20-21813-CIV, 2021 U.S. Dist. LEXIS 169196, at *21-22 (S.D. Fla. Sep. 7, 2021).

Here, each of the factors weigh in favor of approving the attorney fees set out in the Settlement Agreement.

Based on contemporaneous records kept during the pendency of this case, Plaintiffs' counsel estimate that they have expended over $40,000 in time on this case. That amount exceeds the amount in fees agreed to by the parties as part of the Settlement

Agreement. As set out above, this case involved novel, difficult questions of law regarding the proper calculation of damages for the alleged violation in this case. Achieving this result, particularly given the strong defenses raised by Defendant. for the Settlement Class took extensive skill and time from Class Counsel, which was time that counsel could not dedicate to other matters.

This amount in fees was specifically agreed-to by the parties as part of their negotiated settlement during the Settlement Conference. Magistrate Judge McCabe read the terms of the settlement on the record following the conference and all parties agreed to those terms. (DE 40). The Notice Form provided in this case set out the amount in attorney fees, and no Settlement Class Members filed an objection to those fees.

## **CONCLUSION**

For all the reasons presented above, the parties request that this Court grant final approval of Settlement Agreement and dismiss the case with prejudice.

Respectfully submitted this 29th day of December 2022.

| s/Cathleen Scott | s/Gary A. Isaacs |
|---|---|
| Cathleen Scott, Esq. | Gary A. Isaacs, Esquire, of Counsel |
| Florida Bar Number 135331 | Florida Bar No. 602663 |
| Primary e-mail: CScott@scottlawteam.com | COHEN NORRIS WOLMER RAY |
| Secondary e-mail: mail@scottlawteam.com | TELEPMAN BERKOWITZ & COHEN |
| Gabriel "Gabe" Roberts, Esq. | 712 U.S. Highway One, Suite 400 |
| Florida Bar No. 1018435 | North Palm Beach, Florida 33401 |
| Primary e-mail: groberts@scottlawteam.com | Telephone: (561) 844-3600 |
| Secondary e-mail: mail@scottlawteam.com | Email: gai@cohennorris.com |
| SCOTT LAW TEAM, LLC | *Attorneys for Defendant* |
| Jupiter Gardens | |
| 250 South Central Boulevard, Suite 104-A | |

| | |
|---|---|
| Jupiter, FL 33458<br>Telephone: (561) 653-0008<br>Facsimile: (561) 653-0020<br>Secondary Address: 101 Northpoint Parkway<br>West Palm Beach, FL 33407<br>www.ScottLawTeam.com<br>*Attorneys for Plaintiffs* | |